STATE EX REL. TEAGUE, APPELLANT, *v.* BOARD OF COMMISSIONERS OF SILVER BOW COUNTY ET AL., RESPONDENTS.

(No. 2,314.)

(Submitted October 3, 1906. Decided October 29, 1906.)

*Elections—County Commissioners—Constitutional Amendments —Judicial Notice—Mandamus.*

District Courts—Judicial Notice—Constitutional Amendments—Evidence.
1.   While, as a general rule, a court may take testimony to refresh its memory on matters of which it is required to take judicial notice, it should not do so,—on motion to quash an alternative writ of mandate,—for the purpose of informing itself of the regularity of the adoption of a constitutional amendment, where by reason of a proclamation of the governor declaring the amendment to have been adopted, the amendment was *prima facie* a law, of which fact the court was sufficiently informed.

County Commissioners—Constitutional Amendments—Regularity oɪ Adoption—Pleading and Practice—Mandamus.
2.   After the amendment to the Constitution relative to the election and tenure of county commissioners (Session Laws, 1901, p. 208) had ʰeen declared regularly adopted by proclamation of the governor, it thus becoming *prima facie* a law of which courts took judicial notice, it was incumbent upon relator in a proceeding in *mandamus,* in which the regularity of the adoption of the amendment was attacked, to plead facts showing a noncompliance with the provisions of the Constitution which prescribe the mode to be pursued in amending that instrument; and for failure to so plead, and in the absence of an offer to amend, the court properly sustained a motion to quash.

Same—Separate Amendments to Constitution—Manner of Submission.
3.   *Held,* that the amendment to Article XVI, section 4 of the Constitution changing the term of county commissioners from four years to six years, extending the tenure of the then incumbents, and giving district judges power to fill vacancies on the board, is not violative of section 9, Article XIX of the Constitution, providing that separate

amendments must be prepared and distinguished by numbers, or otherwise, so that they may be voted upon separately, but that such amendment must be considered as ne scheme, with the single purpose of establishing and maintaining in existence a board, two of whom at all times are experienced men.

Officers—County .Commissioners—Constitutional Amendments—Extending Official Tenure.
4. The amendment to Article XVI, section 4 of the Constitution changing the tenure of county commissioners from four years to six years, and extending the tenure of the then incumbents, is not violative of Article V, section 31 of that instrument, providing that no law shall extend the term of office of any public officer after his election, the term ''law'' as used in that section having reference to legislative enactments only.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

MANDAMUS by the state of Montana, on the relation of Peter Teague, against the board of county commissioners of Silver Bow county, Montana, W. D. Clark, and others. From a judgment of dismissal, relator appeals. Affirmed.

*Mr. John F. Davies,* and *Messrs. Mackel & Meyer,* for Appellant.

*Mr. C. F. Kelley,* and *Mr. Edwin M. Lamb,* for Respondents.

MR. JUSTICE MILBURN delivered the opinion of the court.

This is an appeal from an order of the district court of Silver Bow county sustaining defendant's motion to quash the alternative writ issued and dismissing the proceedings, and from the judgment which was accordingly entered against relator.

Relator's affidavit in the *mandamus* proceedings recited that the defendant commissioners were the qualified and acting board of commissioners of. Silver Bow county, and, as such, acted as the board of canvassers for the year 1904; that, prior to the election of that year, the relator with two others were nominated to be voted for severally at the next election for the office of county commissioner; that the votes were canvassed and that

the relator and the two others received the highest number of votes of those cast for the several candidates for the positions named; that demand was duly made upon the canvassers to declare the relator and the others as elected to the office mentioned, and to order and direct a certificate of election to issue to the relator, but that the defendants wholly failed and refused to do so. The alternative writ was issued, and a motion to quash was filed. This motion duly coming on for hearing, the court's attention was invited to the fact that the relator based his application upon the alleged fact that the constitutional amendment submitted to the people at the said election, and known as House Bill No. 55 (Session Laws 1901, p. 208), had not been legally adopted, for the reason that the same had not been published in manner and form and for the length of time required by section 9, Article XIX of the Constitution. The court held that this question was one of law for the court, and that it would take judicial notice of the manner of the supposed adoption of said amendment. The court further concluded that it would hear evidence upon the point in order to actually acquaint itself with that of which it took such notice. Thereupon certain evidence was introduced tending to show that the amendment had not been published for the period required by the Constitution, in any paper designated by the Secretary of State for that purpose in said county. The court, after taking this evidence, held that the amendment had been adopted in manner and form as required by law. Hence this appeal.

Almost all of the argument of the appellant, relator in the court below, is devoted to the question as to whether or not the Secretary of State did in fact *cause* the proposed amendment to be noticed and published in the paper of his selection in the said county the required length of time. A great deal of discussion is indulged in as to what is three months' notice. Other questions are raised which will be considered later.

So far as the taking of evidence by the court to refresh its memory is concerned, there cannot be any doubt that, as a general rule, a court may do so. It may look into an almanac to

refresh its memory as to what time the sun rose at Butte on the 4th of July last. The question before us in this case must be considered as one of practice, and not one of substantive law. The court below, as well as this court, takes judicial notice of the fact that the chief executive of this state, soon after the election of 1902, declared by proclamation to the people of this state that the amendment in question had been adopted. Therefore it was *prima facie* the law at the time the motion to quash was submitted and the motion to quash, therefore, should have been granted without the taking of evidence to inform the court, because the court was already informed *prima facie*. If there were any fatal irregularities in the manner and form of its adoption, and if in fact the amendment was not adopted and therefore did not become part of the Constitution, notwithstanding the fact that the governor declared the same to be part of the Constitution, such attack upon the amendment and such attack upon the *prima facie* presumption of the court that it was a part of the Constitution necessarily should have been set out in the pleading in the first place and proven by the petitioner, relator herein. This was not done. The pleading, on its face, was opposed to the *prima facie* law of the land, of which the court took judicial notice. There was not any offer on the part of the relator to amend his position in order to set out the facts which he attempted to prove in evidence to the court on the motion to quash. The court, therefore, was *prima facie* correct in sustaining the amendment of the Constitution, of which it, as well as we, should take judicial notice.

The next point raised is that, besides the matter of publication, the legislature cannot legally submit a proposed amendment in any form which *it may adopt,* except the constitutional one, and that, if it do submit a proposed amendment in any form not authorized by the Constitution, its action would be a nullity, the point being that an examination of the proposed amendment shows that the legislature sought to provide in the form of one amendment for three separate things, to-wit: (1) The election of commissioners for a term of six years, whereas it had been

theretofore only four years; (2) that it attempts to provide for extending the term of the then incumbents long after their election, in other words, to fill certain offices during a certain period of time by means of a constitutional amendment; and (3) it provided how vacancies on the board were to be filled, to-wit: By the judges of the district court. It is urged that these are three separate and distinct matters submitted in one amendment, and that they were not so clearly distinguished by numbers or otherwise so that each could be voted upon separately.

It does not seem to us that these are three separate propositions upon which the people were to be called upon to vote. It is apparent to us, as it must have been to the legislature, that there is only one matter and one subject. The purpose of the legislature was to ask the people at the polls in 1902 whether they wished to amend the Constitution so as to have a board of county commissioners, the term of each commissioner to be six years, one commissioner to go out every two years, with power given to the district judge to fill vacancies at all times in the board, and to have the term of each member of the then existing boards and of short term boards to be elected in 1902 in new counties extended so that the new system might go into effect on the first Monday in January, 1907. This was all one single scheme, with the single purpose of establishing and maintaining in existence a board of commissioners two of whom at all times would be experienced men.

It does not appear to us, as is claimed by counsel, that this amendment is in violation of Article V, section 31, of the Constitution, providing that no law shall extend the term of any public officer after his election. The term "law," as we understand it, in this connection does not refer to the Constitution and the will of the people expressed at the polls in the matter of proposed amendments to that instrument, but relates to laws made by the legislature, which, of course, must not violate any provision of the Constitution. But we do not know of anything in the Constitution which forbids the people to amend their own Constitution, even if the amendment go to the effect of repealing

half thereof, provided the instrument, after amendment, insures a Republican form of government in this state and is not in violation of the Constitution of the United States.

In the brief of relator it is repeated that under Article XIX, section 9, of the Constitution, separate amendments must be prepared and distinguished by numbers or otherwise, so that they can be voted upon separately, provided, however, that no more than three amendments to the Constitution shall be submitted at the same time, and appellant claims that there are three distinct matters submitted in the form of one amendment. As we have said, this does not appear to us to be correct. There is only one logical conclusion and that is that the object of the legislature in submitting this amendment was as we have heretofore stated.

The will of the people in this matter as expressed at the polls was supreme, and, *prima facie,* it appears that the amendment was submitted lawfully and adopted.

Without approving the action of the court below in taking testimony, and without considering what reasons the court below had in sustaining the motion to quash, we conclude that its action was correct in quashing the writ, dismissing the proceedings, and rendering judgment for the respondents.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.