FILED

06/02/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 22-0219

OP 22-0219

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 109

JOHN MEYER,

      Petitioner,

  v.

AUSTIN KNUDSEN, in his official capacity
as MONTANA ATTORNEY GENERAL,

      Respondent.

ORIGINAL PROCEEDING:     Proposed Constitutional Initiative 33

COUNSEL OF RECORD:

      For Petitioner

          John Meyer, Self-Represented, Cottonwood Environmental Law
          Center, Bozeman, Montana

          Holly Seymour, Attorney at Law, Missoula, Montana

      For Respondent:

          Austin Knudsen, Montana Attorney General, David M.S. Dewhirst,
          Solicitor General, Timothy Longfield, Assistant Attorney General,
          Helena, Montana

                              Decided:  June 9, 2022

Filed:

_____
              Clerk

Chief Justice Mike McGrath delivered the Opinion and Order of the Court.

¶1 Petitioner John Meyer is a proponent of a potential ballot initiative, I-33, to be put to a state-wide vote during the November 2022 elections. Such initiatives undergo a statutory process of review and approval to secure their validity prior to collecting signatures that would qualify them for placement on the ballot. *See* §§ 13-27-301 to -317, MCA. One aspect of that process involves a review by the Attorney General of the proposed ballot issue to determine its "legal sufficiency." Section 13-27-312, MCA. The Attorney General rejected I-33 based on a finding of legal deficiency. Petitioner has filed an original action in this Court to seek review of the Attorney General's determination, as permitted by § 13-27-316, MCA. This Opinion and Order addresses the following issue:

*Was the Attorney General's determination of I-33's legal deficiency correct?*

¶2 We conclude that the Attorney General wrongly rejected the proposed ballot initiative in his sufficiency review. We agree, however, that Petitioner cannot challenge the constitutionality of state statutes in a proceeding filed under § 13-27-316, MCA, and we therefore decline to consider Petitioner's additional arguments unrelated to the legal sufficiency determination.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 The Montana Constitution provides mechanisms for the public to enact laws by initiative and to amend the Constitution itself by initiative. Article XIV, Section 9, of the Montana Constitution provides the right of constitutional amendment by initiative: "Petitions including the full text of the proposed amendment shall be signed by at least

2

ten percent of the qualified electors of the state"—including ten percent from "each of two-fifths the legislative districts"—to qualify for appearance on the ballot.

¶4 Petitioner seeks to qualify I-33 for placement on the ballot under this provision. The initiative would amend the provision in the Montana Constitution that provides a guarantee of educational opportunity. Article X, Section 1(3), of the Montana Constitution says that "[t]he Legislature shall provide a basic system of free quality public elementary and secondary schools. . . . It shall fund and distribute in an equitable manner to the school districts the state's share of the cost of the basic elementary and secondary school system." I-33, if approved by the voters, would amend that language to include "prekindergarten" education in this directive and guarantee. The phrases above would be modified to read "free quality public prekindergarten, elementary and secondary schools" and "basic prekindergarten, elementary and secondary school system."

¶5 The Montana Legislature has enacted statutes that govern the form of initiatives and the procedures for ensuring their validity prior to signature collection. *See* Title 13, chapter 27, MCA. The process that initiative proponents must follow to qualify their petition for placement on the ballot involves first submitting the proposed text to the Secretary of State, who then passes the text on to the Legislative Services Division. Section 13-27-202(1), MCA. Staff at the Legislative Services Division will review the text for clarity and for conformity with bill drafting requirements and sections of law governing the form of initiatives. Section 13-27-202(2), MCA. The next step is a screening by the Attorney General. The Secretary of State sends a copy of the proposed ballot issue to the Attorney General for a "determination as to the legal sufficiency of the

3

issue and for approval of the petitioner's ballot statements." Section 13-27-202(4), MCA. Only following the Attorney General's approval may the Secretary of State pass along to the proponents a valid petition to circulate and gather sufficient signatures to qualify for the ballot. If the Attorney General rejects the petition on legal sufficiency grounds, the measure will not be placed on the ballot unless resubmitted pursuant to the constitutional and statutory requirements. *See* §§ 13-27-202(4), -202(5)(f), -312(10)(c), MCA.

¶6 Section 13-27-316, MCA, permits proponents of a ballot issue to appeal to this Court to review the Attorney General's action under § 13-27-212, MCA. To do so, they must file an original proceeding within 10 days of the Attorney General's determination. Section 13-27-316(1), MCA. This Court must resolve the matter with haste. Section 13-27-316(3)(c)(i), MCA; Mont. Const. art. IV, § 7(2).

¶7 Here, after the Secretary of State forwarded I-33 to the Attorney General for review, the Attorney General rejected it as legally deficient. The Attorney General decided that a constitutional provision limiting the scope of laws passed by initiative should also extend to constitutional amendments passed by initiative. Article III, Section 4, of the Montana Constitution addresses the right of the people to "enact laws by initiative on all matters except appropriations of money and local or special laws." In the Attorney General's legal sufficiency review, he determined that the Article III, Section 4 restriction against matters appropriating money should also apply to constitutional amendment initiatives. The Attorney General went on to determine that I-33 would constitute an appropriation of money, and he rejected the measure on that ground. Petitioner appeals

4

to this Court, under § 13-27-316, MCA, and argues that the Attorney General's determination was incorrect and overstepped the authority of that office.

¶8      At the Court's direction, the Attorney General filed a response to Meyer's petition on May 16. The response pointed out among other things that Meyer had neglected to serve the Secretary of State, as required by § 13-27-316(3)(a), MCA. We ordered Meyer to serve his petition as the statute requires, and Meyer filed a new certificate of service on May 24, 2022, reflecting service on both the Attorney General and Secretary of State.

## DISCUSSION

¶9      Meyer first argues that the Attorney General violated the separation of powers doctrine by rejecting I-33 on the basis of its substantive constitutionality, a question committed to the authority of the judicial branch. As a preliminary matter, we agree with the Attorney General that Meyer's argument misapprehends the nature of the Attorney General's review. On review for legal sufficiency, the Attorney General may determine whether the petition for a ballot issue complies with the statutory and constitutional requirements "governing submission of the proposed issue to the electors." Section 13-27-312(8), MCA. *See also Montanans Opposed to I-166 v. Bullock*, 2012 MT 168, ¶ 6, 365 Mont. 520, 285 P.3d 435. Meyer asks the Court to hold unconstitutional the provisions of § 13-27-312(8), MCA, that provide substantive review of initiatives. But the Attorney General in this case did not determine whether the substantive provisions of a ballot measure, if passed by the electorate, would violate the Constitution. He determined whether the measure constituted an appropriation. If it did, it would be outside

5

the scope of constitutional requirements governing submission to the electors and could properly be rejected.

¶10 We accordingly turn to the question whether the Attorney General's determination of I-33's legal deficiency was correct.

¶11 The prohibition against appropriation-by-initiative contained in Article III, Section 4, of the Montana Constitution applies in the context of when "[t]he people may enact laws" through this process. Mont. Const. art. III, § 4(1). The limitation is not present in the Article XIV, Section 9 constitutional provision providing the right to amend the Constitution by initiative. Petitioner's proposal here, I-33, would be a constitutional amendment and thus operates outside the appropriation restriction that the Constitution explicitly applies to legislation by initiative.

¶12 We conclude that this distinction resolves the issue. There are inherent differences between constitutional provisions and legislation, and only the latter may direct an appropriation. As we have long held, an appropriation is "an authority *from the law-making body* in legal form to apply sums of money out of that which may be in the treasury in a given year, to specified objects or demands." *State ex rel. Bonner v. Dixon*, 59 Mont. 58, 78, 195 P. 841, 845 (1921) (emphasis added), *overruled on other grounds, Board of Regents v. Judge*, 168 Mont. 433, 447, 543 P.2d 1323, 1331 (1975). An appropriation, therefore, is something within the prerogative of the Legislature, and extends to "all [] public operating funds of state government." *Judge*, 168 Mont. at 446, 543 P.2d at 1331. We have previously noted "a long line of cases" making clear that

6

"'appropriation' refers only to the authority given to the legislature to expend money from the state treasury." *Nicholson v. Cooney*, 265 Mont. 406, 415, 877 P.2d 486, 491 (1994).

¶13 The many articles of the Montana Constitution, by their very nature, cannot constitute appropriations—they do not dictate the expenditure of specific amounts of money for specific purposes, as might legislative acts, but instead reflect the rights, obligations, structure, and goals dictating how the Montana government functions and the people's rights it protects. Constitutional provisions do not "expend money from the state treasury." *Nicholson*, 265 Mont. at 406, 877 P.2d at 491. Instead, the document only provides the framework through which the Legislature may do so. By its nature, an appropriation is strictly a legislative function. The limitation in Article III, Section 4 makes clear that although the public has a right to carry out certain legislative acts by initiative, the Constitution limits that right in certain ways. These initiatives may address "all matters except appropriations of money or local or special laws." Mont. Const. art. III, § 4(1). The public also has a right to amend the Constitution by initiative, and that right contains no such limitation because constitutional amendments reflect broader legal structures that, as pertinent here, define or circumscribe the authority of the branches of government.

¶14 The Attorney General argues that the "appropriation" restriction in Article III, Section 4 should be read to also extend to the separate process in Article XIV, Section 9, because both refer to the power of "initiative" and because the broad, abstract concept of "law" may also include constitutional law. The Attorney General reasons that the word "laws" in the phrase "enact laws" must also include constitutional amendments. But the

7

structure of the Constitution and the language of its relevant provisions do not support this reading. Article III, Section 4 is specific to the *enactment of law* by initiative, and an appropriation of money, as noted above, may be made only by law, not by the Constitution. The mere fact that a broadly applicable word like "law" may have multifaceted meanings in different contexts is not a sufficient reason to interpret the Constitution contrary to its plain text. The Constitution has one provision regarding when the people may "enact law" and a separate one regarding when the people may "propose constitutional amendments." The word law in the former provision need not swallow the entirely separate process governed by the latter.

¶15    Our conclusion that the limit in Article III, Section 4 does not extend to the separate provision in Article XIV, Section 9 comports with our past recognition of the difference between constitutional provisions regarding legislation and those regarding constitutional amendments. In *Mont. Ass'n of Counties v. State*, 2017 MT 267, 389 Mont. 183, 404 P.3d 733, a party argued that the single-subject rule that Article V, Section 11(3), of the Montana Constitution applies to legislation should also extend to proposed constitutional amendments as governed by Article XIV. We disagreed. "[T]he act of amending the constitution is significantly different from enacting or enabling legislation," we noted. *Mont. Ass'n of Counties*, ¶ 19 (quoting *Marshall v. State*, 1999 MT 33, ¶ 22, 293 Mont. 274, 975 P.2d 325). "[T]he Legislature has no control over a constitutional amendment proposed by initiative. It follows that Article V, governing the way in which the Legislature prepares and proposes bills, does not also govern constitutional amendments raised by initiative, a power lying exclusively with the people and provided for in Article

8

XIV." *Mont. Ass'n of Counties*, ¶ 21. The same logic applies to the distinction between Article III and Article XIV. Article III limits the power to "enact laws," in the Legislature's stead, by initiative, and reserves certain matters to the Legislature. Article XIV discusses a separate, exclusive power by which the people may amend the Constitution.

¶16 The Attorney General's determination also explained his opinion that I-33 would constitute an appropriation under the rules that apply to legislative enactments by initiative. In light of our discussion above, we find it unnecessary to further consider this analysis. Because the Attorney General's legal sufficiency determination was predicated on an erroneous reading of the Constitution, we conclude that the Attorney General's decision was incorrect, and we reverse the determination that I-33 is legally deficient.

¶17 Finally, we note that Petitioner devoted much of his briefing to argument about the constitutionality of other statutes, such as the requirement that signature-gatherers be residents of Montana under § 13-27-102(2)(a), MCA. Our jurisdiction in an original proceeding filed pursuant to § 13-27-316, MCA, is limited to "challenging the adequacy of the statement or the attorney general's determination and requesting the court to alter the statement or modify the attorney general's determination." Section 13-27-316, MCA. We do not have jurisdiction in this action to consider broader, only tangentially related constitutional challenges to other provisions of law, and we decline to address these additional matters argued by Petitioner.

¶18 We also decline Petitioner's request to extend his deadline for collecting and submitting signatures to qualify I-33 for the ballot. The statutory deadlines that govern

9

petition submission are abundantly clear, and the statutory scheme provides and accounts for ample time for matters like the legal sufficiency review and challenge. *See* §§ 13-27-104, -202, -301, MCA (providing a pre-election deadline for submitting petitions, permitting petition circulation up to a year prior to that date, and permitting signature submission up to nine months prior to that date). Petitioner could have avoided the challenge of his present compressed timeline by simply preparing his proposed ballot initiative much sooner than he did, and the avoidable time-crunch he may now face is an insufficient ground for this Court to override numerous explicit statutory deadlines.

## ORDER

¶19 IT IS ORDERED that Petitioner's request to overrule the Attorney General's legal-sufficiency determination is GRANTED. The Attorney General's rejection of I-33 is vacated, and the Secretary of State is directed to return the proposal to Petitioner for the purpose of gathering signatures.

¶20 The Clerk is directed to provide notice of this Opinion and Order to all counsel of record and the Montana Secretary of State.

DATED this 2nd day of June, 2022.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

10