No. 14379

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

———————

IN THE MATTER OF THE ESTATE
OF CHARLES LIVINGSTONE HOLMES,
deceased.

———————

Appeal from:  District Court of the Nineteenth Judicial District,
              Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

    For Appellant:

        Jardine, Stephenson, Blewett & Weaver, Great Falls,
         Montana
        Jack L. Lewis argued, Great Falls, Montana

    For Respondent:

        Fennessy, Crocker & Harman, Libby, Montana
        Evans and German, Libby, Montana
        Ann German argued, Libby, Montana

———————

                           Submitted: June 14, 1979

                           Decided:
                                     AUG 27 1979

Filed:  AUG 27 1979

_____ Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a District Court order finding that the will of Charles Livingstone Holmes provided for a charitable bequest within the purview of Montana's Mortmain Statute and therefore was valid only as to one-third of the decedent's estate and that the remaining two-thirds of the estate should pass to the heirs of the decedent by operation of law. The beneficiary of the charitable bequest negated by the order, the Shriners Hospitals for Crippled Children, appeals.

On January 5, 1978, just 12 days prior to his death, Charles Holmes executed a last will in which he devised all his property to the Shriners Crippled Children's Home of San Francisco, California. The will acknowledged that decedent's immediate family consisted of two adult sons but specifically stated that no provisions be made for them. Decedent had executed a prior will in 1977 in which he disinherited his sons and left all his property to the Shriners Hospitals after an intervening trust.

Following Holmes' death, the personal representative named in his will petitioned for formal probate. The petition was set for hearing on March 23, 1978, and the Shriners were notified of the hearing. At the hearing, decedent's son, Charles Holmes, Jr., orally objected to the will on the basis of lack of testamentary capacity. Shriners did not appear at the hearing and were not given notice of the objection to the will. The District Court took the matter under advisement.

On April 24, 1978, the District Court entered an order admitting the will to probate but declaring two-thirds of

-2-

the devise void under section 72-11-334, MCA, Montana's Mortmain Statute. The clerk of court did not serve notice of entry of the order on the Shriners. The personal representative did send the Shriners a letter advising them of the voidance of two-thirds of the bequest. They received the letter on May 5, 1978. On May 17, 1978, the Shriners appealed the matter to this Court.

Appellant raises several issues on appeal including the constitutionality of the Mortmain Statute and its continued validity under the Montana Uniform Probate Code. Respondent, Charles Holmes, Jr., asserts the Mortmain Statute is constitutional and valid under Montana's Uniform Probate Code. He also contends appellant cannot raise the challenges to the statute for the first time on appeal. We will first address the arguments concerning appellant's ability to raise the issues pertaining to the validity of the Mortmain Statute.

Respondent contends that since appellant made no appearance in District Court to raise its challenges to the Mortmain Statute, well-established principles of law prevent it from doing so on appeal. Appellant asserts that it was not given sufficient notice of the proceeding in the District Court to allow it to present its arguments on the validity of the Mortmain Statute. Appellant argues that by raising the issues on appeal, it raises them at the first opportunity afforded.

This issue can be resolved by considering the notice required at different stages of formal probate proceeding and the effect of lack of required notice on any judicial action taken as a result of the proceedings. When formal probate proceedings begin, the Montana Uniform Probate Code

-3-

(MUPC), section 72-3-305, MCA, sets out the notice require-
ments. The section states notice of the time and place of
the hearing on the petition for formal probate shall be
given to parties including the decedent's heirs and devisees
named in any will. The statute effectively deals with the
notice requirements at the outset of formal probate pro-
ceedings. In this case, the statute was complied with as
the Shriners were notified of the initial hearing.

Next, the notice required of any will contest must be
considered. MUPC section 72-1-303, MCA, entitled "Pleadings--
when orders or notice binding one binds another--represen-
tation," deals with formal proceedings involving estates.
Subsection (3) of that provision states, "Notice is required
as follows: (a) Notice as prescribed by 72-1-301 shall be
given to every interested person . . ." Interested person
under the MUPC includes named devisees. Section 72-1-
103(21), MCA. Although subsection (3) does not go on to
state that the notice required by the subsection means
notice of will contests, the heading and context of the
section indicate the notice referred to in the statute is
notice to interested persons of pleadings filed in formal
probate proceedings. Since the MUPC requires parties who
oppose the probate of a will to state their objections in
the form of pleadings, section 72-3-308, MCA, will contests
would be pleadings and all interested persons would have to
be given notice they had been filed. The Shriners received
no notice of the will contest here.

The notice required on the entry of an order in formal
probate proceedings must also be considered. This does not
fall under the control of a specific provision of the MUPC.
To determine the notice required at this stage of the pro-

ceedings, reference must be made to the Montana Rules of Civil Procedure. The MUPC provides for this step in situations not specifically covered by the MUPC. Section 72-1-207, MCA. The rules require the clerk of court to serve notice of entry of an order upon each party to an action who is not in default for failure to appear. Rule 77(d), M.R.Civ.P.

To fall under Rule 77(d), a named devisee must satisfy two criteria. The devisee must be a party under the meaning of the rule and the devisee must not be in default for failure to appear. Regarding parties to a probate proceeding, the MUPC defines "interested persons" as including ". . . heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person which may be affected by the proceedings." Section 72-1-103(21), MCA (emphasis added). In section 72-3-305(2), MCA, the MUPC requires notice of the initiation of formal probate proceedings to be given to parties including named devisees. These two sections of the MUPC indicate the legislature intended named devisees to be parties to formal probate proceedings and, therefore, receive notice under Rule 77(d). Case law from other jurisdictions further substantiates this point. The California Court of Appeals held named beneficiaries in a testamentary trust to be indispensible parties to the litigation in In Re the Estate of Reed (1968), 259 Cal.App.2d 14, 66 Cal.Rptr. 193, 198-99. On the second point, although the Shriners did not make an appearance in the matter, no default was requested or entered. Thus, named devisees in wills who are not in default for failure to appear are entitled to notice of the entry of an order in formal probate proceedings. The

-5-

Shriners stand in that position in this case. They should have been given notice of the entry of the order by the clerk of court.

Under the MUPC, the Shriners were entitled to notice at all stages of the formal probate proceedings. They did not receive notice of the will contest or the entry of the order partially admitting the will to probate. The MUPC and the Montana Rules of Civil Procedure dictate the consequences of failure to provide the required notice. The MUPC states where notice is required, interested persons may be bound by orders where notice in conformity with MUPC provisions was given. Section 72-3-111(2), MCA. The negative inference of that provision would be that orders issued without notice are not binding on the parties that do not receive notice. Under that provision, the order entered in this case would have no binding effect on the Shriners.

The effect of lack of notice of entry of the order of the District Court is covered by case law interpreting the Montana Rules of Civil Procedure. Rule 77(d) requires the clerk of court to send notice of orders entered in cases to parties to an action not in default for failure to appear. If the clerk fails to send the notice, the time for a party to appeal an order does not begin to run. Pierce Packing Co. v. The District Court (1978), ____ Mont. ____, 579 P.2d 760, 761-62, 35 St.Rep. 656, 658-59; Haywood v. Sedillo (1975), 167 Mont. 101, 104, 535 P.2d 1014. This rule applies regardless of actual notice of the entry of the order by the party seeking to appeal the order. Pierce, 579 P.2d at 761. Here, the record does not disclose any notice having been sent to the Shriners by the clerk at any time. Under Pierce, the time for appealing the order of the Dis-

-6-

trict Court has not yet begun to run. This is important in formal probate proceedings because the MUPC allows the District Court to modify or vacate orders in the proceedings within the time allowed for appeal. Section 72-3-318, MCA. Since the time for appeal has not yet begun to run in this matter, neither has the time to request the court to modify or vacate the order entered here. The Shriners can still request the District Court to modify or vacate the order the court entered on the basis of the issues raised by the Shriners.

The above analysis shows appellant was not given proper notice of the content to Charles Holmes' will or the entry of the order voiding two-thirds of the devise to the Shriners. The effect of the improper notice is that the order issued by the District Court does not bind appellant and the time for appellant to petition the District Court to modify or vacate the order has not elapsed. We therefore remand the case to the District Court to consider any petition appellant might make to modify or vacate the order entered by the District Court.

Having determined the case must be returned to the District Court for further proceedings, we will now consider the validity of the Mortmain Statute for the guidance of the District Court in reconsidering the matter. Appellant bases its challenges to the statute on constitutional grounds and also argue the Mortmain Statute conflicts with provisions of the Montana Uniform Probate Code, thus being impliedly repealed by the code. Addressing the issue of implied repeal of the Mortmain Statute by conflicting provisions in the MUPC, we find that no case law exists concerning the effect of adoption of the Uniform Probate Code on a Mortmain

Statute. Only seven states still have Mortmain Statutes. 52 Notre Dame Lawyer 638, by Kymson F. DesJardins, at 639 (1977). Of the seven states with Mortmain Statutes, only Montana, Idaho and Florida have adopted the Uniform Probate Code. Neither Idaho nor Florida have ruled on the validity of the Mortmain Statute under the Uniform Code, nor did those states adopt a provision in their Uniform Probate Code comparable to section 72-1-106, MCA, which states:

> "Should any provision of this code conflict with any provisions of other statutes of the state of Montana and relating to probate, guardianship, or other subjects incorporated in this code and such other statute or statutes was or were adopted prior to the enactment of this code, the provisions of this code shall be deemed to be controlling."

To determine the validity of the Mortmain Statute under the Uniform Probate Code, we must turn to general rules of statutory construction aided by section 72-1-106, MCA.

In State v. Langan (1968), 151 Mont. 558, 445 P.2d 565, the Court faced the problem of determining the effect of Uniform Drug Act on the general statutes in the Criminal Code. The Uniform Drug Act provided a comprehensive scheme for regulation of the preparation, possession and sale of narcotic drugs. Under these facts, the Court held the legislature intended to cover the whole field of narcotics regulation under the Uniform Act. Where provisions of the general laws could not be harmonized to give effect to both the specific law in the area and general legislation passed prior to the adoption of the comprehensive legislation, the conflicting provisions of the earlier law were repealed. Langan, 151 Mont. at 564.

In State v. Holt (1948), 121 Mont. 459, 194 P.2d 651, the Court interpreted the effect of State Liquor Control Act, a comprehensive piece of legislation enacted in 1933 in

-8-

anticipation of a "day of jubilee" following the repeal of Eighteenth Amendment on state prohibition laws not expressly repealed by the Control Act.  In doing so, the Court stated that while repeals by implication are not favored, where an irreconcilable conflict exists between earlier and later statutes, the courts do not hesitate to declare the earlier statute repealed by the later legislative action.  Holt, 121 Mont. at 468.  The Court further said:

> "Especially is the repeal of the prior incon-
> sistent Act held to be the inevitable result
> where the later Act is a comprehensive Act
> 'establishing elaborate inclusions and exclu-
> sions of persons, things and relationships
> ordinarily associated with the subject.'
> Sutherland on Statutory Construction, para-
> graph 2018."  Holt, 121 Mont. at 467-68.

See also, State ex rel. Marlenee v. District Court (1979), ___ Mont. ____, 592 P.2d 153, 36 St.Rep. 457.

Given these rules of construction and their specific implementation under Montana case law, the Mortmain Statute must be declared impliedly repealed by the adoption of the Montana Uniform Probate Code if the statute conflicts with the Uniform Code in such a manner as to be ". . . wholly inconsistent, incompatible, and not capable of being recon-ciled" with the code.  State ex rel. Jenkins v. Carisch Theatres Inc. (1977), ____ Mont. _____, 564 P.2d 1316, 1319, 34 St.Rep. 481.

The Mortmain Statute allows only one-third of a testa-tor's estate to pass to a charity under a will executed within thirty days of the testator's death.  Section 72-11-334, MCA.  When implemented, the statute requires as much as two-thirds of a testator's estate to pass contrary to the testator's intent as expressed in a will.  The Montana Uniform Probate Code clearly requires the intent of the

testator to control the passing of his property. The Code states: "The intention of a testator as expressed in his will controls the legal effect of his dispositions . . ." Section 72-2-501, MCA. Section 72-1-102, MCA, provides:

"(1) This code shall be liberally construed and applied to promote its underlying purposes and policies.

"(2) The underlying purposes and policies of this code are to:

". . .

"(b) discover and make effective the intent of a decedent in distribution of his property;"

These statutes obviously conflict. The Uniform Probate Code mandates implementation of the testator's intent. The Mortmain Statute prevents implementation of the intent expressed in a will as to as much as two-thirds of the testator's estate. Judicial construction cannot reconcile the statutes. It is impossible to devise a system within the terms of the Mortmain Statute and the Code to give effect to the intent of the testator on the one hand and allow two-thirds of an estate to pass contrary to the express language of the testator's will on the other hand.

Applying the above rules of statutory construction to the Mortmain Statute subsequent to the passage of the Uniform Probate Code, we find Mortmain must fall. The legislature enacted the statute in 1893. Eighty-one years later the legislature enacted a comprehensive piece of legislation specifically dealing with the area covered by Mortmain. The comprehensive legislation conflicts with the prior enacted statute. The legislature thus impliedly repealed the Mortmain Statute and we now so hold.

At this point we deem it wise to inject a note on the scope of the holding in this case. We hold only that the

provisions in the Montana Uniform Probate Code mandating the implementation of the testator's intent, impliedly repeal a prior enacted and conflicting statute--the Mortmain Statute. By this holding, we do not suggest this same reasoning applies to sections within the Code itself, such as the safeguards provided for an omitted spouse or pretermitted children, that may require property to pass in a manner not set out in the testator's will. The rules of construction dealing with the effect of subsequent comprehensive legislation on existing laws are not the same as those pertaining to construing separate sections of comprehensive legislation. Further, the legislature clearly intended such provisions to be exceptions to the rule that the testator's intent controls the disposition of his property. Section 72-3-101, MCA.

Having found the Mortmain Statute impliedly repealed by the adoption of the Uniform Probate Code, we need not address the constitutional issues raised by appellant.

The case is remanded to the District Court with directions to allow appellant to petition the District Court to modify or vacate the order entered by the District Court. In considering any such petition, the District Court is advised that the adoption of the Montana Uniform Probate Code impliedly repeals section 72-11-334, MCA, Montana's Mortmain Statute.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

-11-