No. 01-882

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 32

MACK COLE, JOSEPH C. HEIKEN,
B.F. "CHRIS" CHRISTIAENS, ROBERT
EMMONS,

Plaintiffs,

v.

STATE OF MONTANA ex rel. BOB
BROWN, SECRETARY OF STATE,

Defendants.

APPEAL FROM: An Original Proceeding
                          In the Supreme Court of the State of Montana

COUNSEL OF RECORD:

For Plaintiffs:

          Stanley T. Kaleczyc, Kimberly A. Beatty, Browning, Kalecyzc, Berry & Hoven, Helena,
Montana

For Defendants:

          Mike McGrath, Montana Attorney General, Brian M. Morris, Solicitor, Helena, Montana

Amicus:

          Bradley A. Molnar, Laurel, Montana; Stephanie A. Oblander, Gregory G. Smith, Great Falls,
Montana
          (for Edward Butcher, Allan Walters and Steve Vick)

Submitted on Briefs: February 5, 2002

Decided: February 26, 2002

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Plaintiffs Mack Cole, Joseph C. Heiken, B.F. "Chris" Christiaens, and Robert Emmons, filed an original proceeding in this Court challenging the validity of Constitutional Initiative 64 (CI-64) imposing term limits on ten state and federal offices. We hold that Plaintiffs' claim is barred by laches.

¶2 Plaintiffs presented the following issues for our review:

¶3 1. Whether the failure of CI-64 to comply with all constitutionally mandated procedures is subject to strict scrutiny by this Court.

¶4 2. Whether CI-64, which required the electorate to vote on whether to impose term limits on ten separate elective offices in one ballot proposition, violates Article XIV, Section 11 of the Montana Constitution.

¶5 3. Whether CI-64, which required the electorate to vote on whether to impose term limits on ten separate elective offices in one ballot proposition, violates Article V, Section 11(3) of the Montana Constitution.

¶6 4. Whether the severability clause found in CI-64 is applicable when the initiative was constitutionally flawed in its submission to the voters or when those portions that served as the inducement to the enactment of the initiative have been declared unconstitutional by the United States Supreme Court.

¶7 5. Whether Plaintiffs are entitled to recover attorney fees and costs pursuant to the Private Attorney General Doctrine.

¶8 In its response, Defendants raised the following additional issue:

Whether the doctrine of laches bars Plaintiffs from challenging the process by which the voters approved CI-64 nine years after its enactment.

¶9 Because we hold that Plaintiffs' claim is barred by laches, we do not address the merits of Plaintiffs' claim.

Background

¶10 CI-64 was enacted into law in the November 3, 1992 general election. It requires the Montana

Secretary of State to not certify a candidate's nomination or election to, or print or cause to be printed on any ballot the name of a candidate for, the offices of Governor, Lieutenant Governor, Secretary of State, State Auditor, Attorney General, Superintendent of Public Instruction, Montana State Representative, Montana State Senator, United States Representative and United States Senator, if such candidate has already served in that office for certain specified periods of time.

¶11 CI-64 was enacted as Article IV, Section 8 of the Montana Constitution. It provides as follows: Limitation on terms of office. (1) The secretary of state or other authorized official shall not certify a candidate's nomination or election to, or print or cause to be printed on any ballot the name of a candidate for, one of the following offices if, at the end of the current term of that office, the candidate will have served in that office or had he not resigned or been recalled would have served in that office:
(a) 8 or more years in any 16-year period as governor, lieutenant governor, secretary of state, state auditor, attorney general, or superintendent of public instruction;
(b) 8 or more years in any 16-year period as a state representative;
(c) 8 or more years in any 16-year period as a state senator;
(d) 6 or more years in any 12-year period as a member of the U.S. house of representatives; and
(e) 12 or more years in any 24-year period as a member of the U.S. senate.
(2) When computing time served for purposes of subsection (1), the provisions of subsection (1) do not apply to time served in terms that end during or prior to January 1993.
(3) Nothing contained herein shall preclude an otherwise qualified candidate from being certified as nominated or elected by virtue of write-in votes cast for said candidate.

Art. IV, Sec. 8, Mont.Const.

¶12 The proponents of CI-64 drafted the initiative so that voters were required to vote for or against term limits for all ten offices in one ballot proposition. Voters did not have the choice of voting for or against term limits for each of the offices individually.

¶13 Term limits on the offices of the United States House of Representatives and the offices of the United States Senate have since been declared unconstitutional by the United States Supreme Court. See United States Term Limits, Inc. v. Thornton (1995), 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (holding that establishing qualifications for members of Congress is exclusively a matter of federal law and the states have no power to modify or add to the qualifications established by federal law).

¶14 Plaintiffs Cole and Christiaens are two current Montana State Senators who are precluded from being candidates for re-election as a result of CI-64. Cole is completing his second term as a member of the Montana Senate, having been elected to that post in November 1994 and November 1998. Christiaens has served in the Montana Senate continuously since 1991. He was elected to the Senate most recently in November 1998. The Montana Secretary of State has determined that pursuant to the terms of CI-64, both Cole and Christiaens are ineligible to serve another term in the Montana Senate.

¶15 Plaintiffs Heiken and Emmons are individual electors who are constituents of Cole and Christiaens respectively. Heiken and Emmons would each choose to vote for Cole or Christiaens, but for CI-64.

¶16 Defendant is the State of Montana sued through Secretary of State Bob Brown. Brown is the chief election officer charged with overseeing and certifying the election process in Montana. He is required by the terms of CI-64 to give effect to and enforce the provisions and requirements of CI-64.

¶17 On December 18, 2001, Plaintiffs filed their "Original Complaint for Declaratory Judgment and

Injunctive Relief" in this Court challenging the validity of CI-64. Plaintiffs are seeking a judicial declaration that the November 1992 general election is invalid with respect to CI-64 and that CI-64 is null and void and no longer has any force or effect. Plaintiffs are also seeking an injunction directing the Secretary of State to decertify the election results with respect to CI-64 and a permanent injunction prohibiting the Secretary of State from complying with the requirements or enforcing the provisions of CI-64.

¶18 Since this case involves constitutional issues of major statewide importance and purely legal questions of constitutional construction, and since urgency and emergency factors exist that make the normal appeal process inadequate, this Court assumed original jurisdiction in this case on December 20, 2001, pursuant to Article VII, Section 2 of the Montana Constitution and §§ 3-2-201 and 202, MCA.

Discussion

¶19 Plaintiffs argue that because CI-64 consisted of limitations on ten separate offices, it amended the Montana Constitution in ten separate ways thereby violating Article XIV, Section 11 of the Montana Constitution which provides: "If more than one amendment is submitted at the same election, each shall be so prepared and distinguished that it can be voted upon separately." Plaintiffs maintain that Montana voters should have been permitted the opportunity to approve or reject term limits for each separate office.

¶20 Plaintiffs also argue that because CI-64 created term limits for ten separate state and federal government offices, it contained multiple subjects thereby violating Article V, Section 11(3) of the Montana Constitution which provides in part: "Each bill . . . shall contain only one subject, clearly expressed in its title." Thus, Plaintiffs maintain that with but a single vote, Montana voters were required to vote on multiple subjects, namely, whether they wanted term limits for all enumerated offices or none of those offices.

¶21 In their response, Defendants point out that Plaintiffs do not allege directly that term limits, in and of themselves, violate any constitutional provision. Instead, Defendants note that Plaintiffs are challenging the procedure by which Montana voters approved CI-64. To that end, Defendants argue that we should not countenance Plaintiffs' nine-year delay in challenging the process by which the Montana voters enacted CI-64 as Plaintiffs provided no excuse to justify the delay.

¶22 In addition, Defendants argue that all five executive officers and an entire class of state legislators have left office based upon CI-64's presumptive validity. Defendants maintain that these former officeholders, their supporters and other potential candidates who made decisions based on CI-64's presumptive validity would be prejudiced by Plaintiffs' late-filed action.

¶23 As Defendants articulate in their response, the application of the doctrine of laches to a challenge to the process by which the voters amended the Montana Constitution represents an issue of first impression for this Court.

¶24 Laches is a concept of equity that can apply when a person is negligent in asserting a right. In re Marriage of Hahn (1994), 263 Mont. 315, 318, 868 P.2d 599, 601 (citing Filler v. Richland County (1991), 247 Mont. 285, 290, 806 P.2d 537, 540). Laches exists "where there has been an unexplainable delay of such duration or character as to render the enforcement of an asserted right inequitable, and is appropriate when a party is actually or presumptively aware of his rights but fails to act." Larson v. Undem (1990), 246 Mont. 336, 340, 805 P.2d 1318, 1321 (citing Sperry v. Montana State Univ. (1989), 239 Mont. 25, 778 P.2d 895; Smithers v. Hagerman (1990), 244 Mont. 182, 797 P.2d 177). "A party is held to be presumptively aware of his or her rights 'where the circumstances of which he [or she] is

cognizant are such as to put a [person] of ordinary prudence on inquiry.'" Johnson v. Estate of Shelton (1988), 232 Mont. 85, 90, 754 P.2d 828, 831 (quoting Hereford v. Hereford (1979), 183 Mont. 104, 108-09, 598 P.2d 600, 602).

¶25 We have repeatedly stated that in order to apply the doctrine of laches, a showing must be made that the passage of time has prejudiced the party asserting laches or has rendered the enforcement of a right inequitable. Kelleher v. Bd. of Social Work Examiners (1997), 283 Mont. 188, 191, 939 P.2d 1003, 1005 (citing Helena Aerie No. 16, F.O.E. v. Montana Dept. of Revenue (1991), 251 Mont. 77, 81, 822 P.2d 1057, 1059; Brabender v. Kit Mfg. Co. (1977), 174 Mont. 63, 67-68, 568 P.2d 547, 549). Laches is not a mere matter of elapsed time, but rather, it is principally a question of the inequity of permitting a claim to be enforced. Hunter v. Rosebud County (1989), 240 Mont. 194, 199, 783 P.2d 927, 930 (citing In re Estate of Wallace (1980), 186 Mont. 18, 606 P.2d 136). Hence, the doctrine of laches is the practical application of the maxim, "Equity aids only the vigilant." Filler, 247 Mont. at 290, 806 P.2d at 540 (citing Richardson v. Richland County (1985), 219 Mont. 48, 56, 711 P.2d 777, 782).

¶26 Plaintiffs claim that the doctrine of laches is inapplicable here because a ripe case or controversy did not exist until the fall of 2001 when Cole and Christiaens each decided to seek re-election for a third term. Plaintiffs rely on the following excerpt from Montana Power Co. v. Montana Public Serv. Comm, 2001 MT 102, ¶ 32, 305 Mont. 260, ¶ 32, 26 P.3d 91, ¶ 32, in support of this proposition:

The ripeness doctrine . . . is a principle of law, grounded in the federal constitution as well as in judicial prudence, that requires an actual, present controversy, and therefore a court will not act when the legal issue raised is only hypothetical or the existence of a controversy merely speculative.

¶27 Contrary to Plaintiffs' assertions, the controversy here was neither "hypothetical" nor "speculative" prior to Cole and Christiaens' decisions in the fall of 2001 to seek re-election for a third term. If the process by which CI-64 was enacted is invalid as Plaintiffs claim, then it was invalid in November 1992 when the initiative was enacted and the case or controversy was ripe at that time. In fact, in Marshall v. State ex rel. Cooney, 1999 MT 33, 293 Mont. 274, 975 P.2d 325,--a decision from this Court relied on heavily by Plaintiffs--a similar challenge to the process by which a constitutional initiative was enacted (regarding the people's right to vote on tax increases) came within one month of that initiative's enactment.

¶28 Cole also asserts that a ripe case or controversy did not exist until recently because he was not aware that term limits applied to the Montana Senate when he first ran for office in 1994. This argument is not only disingenuous it is beside the point. First, it appears implausible that Cole would run for an office, particularly an office on the state level, without acquainting himself with the qualifications required for that office and the length of time he could serve in that office. In any event, people are presumed to know the law. State ex rel. Wallace v. Callow (1927), 78 Mont. 308, 315, 254 P. 187, 191 (county commissioner elect was conclusively presumed to know the law respecting the qualifications for that office).

¶29 Second, Cole's claim that he was not aware that term limits affected the Montana Senate misses the point. Plaintiffs' challenge to CI-64 is based upon the process by which CI-64 was enacted, not whether term limits violate any substantive right of Cole or the other Plaintiffs.

¶30 Although the application of the doctrine of laches to a challenge to the process by which the voters amended the Montana Constitution represents an issue of first impression for this Court, we have previously barred a challenge to a statutory initiative due to unreasonable delay. In State ex rel. Graham

v. Board of Examiners (1951), 125 Mont. 419, 239 P.2d 283, the plaintiffs challenged a statutory initiative on the grounds that the proponents of the initiative failed to adhere to certain constitutional requirements in presenting it. Specifically, the plaintiffs in Graham alleged that the proposal involved issues of state debt that should have been placed on a separate ballot for which only taxpayers could vote. We held that such a challenge to the initiative should have taken place before the election to allow the election officials to place the measure on a separate ballot if necessary and that plaintiff's failure to mount a timely attack prevented them from raising such issues after the election. Graham, 125 Mont. at 430-31, 239 P.2d at 290-91.

¶31 Courts in other jurisdictions have also relied on laches to reject belated claims that statutes were enacted in violation of constitutional procedural requirements. See Stilp v. Hafer (Pa. 1998), 718 A.2d 290 (The court held that laches prevented plaintiffs from challenging the procedure used to pass a bill creating a radioactive waste disposal facility approved eight years earlier. The court distinguished the application of laches to a claim that a statute violated some substantive provision of the state constitution from a procedural challenge.); Schaeffer v. Anne Arundel County (Md. 1995), 656 A.2d 751 (holding that laches barred a claim that a county ordinance enacted four years earlier was void due to a procedural defect in its enactment when there was no substantive objection to the ordinance's validity); Citizens for Responsible Govt. v. Kitsap County (Wash. Ct. App. 1988), 758 P.2d 1009 (holding that laches barred the 1986 challenge to a county zoning ordinance adopted in 1983 that allegedly violated statutory notice requirements).

¶32 Moreover, to consider Plaintiffs' challenge now, after CI-64 has been in place for nine years, would prejudice those who have relied upon its presumptive validity. As we stated previously, laches is not a mere matter of elapsed time, but rather, it is principally a question of the inequity of permitting a claim to be enforced. Hunter, 240 Mont. at 199, 783 P.2d at 930. At least some of the executive officers and a large number of state legislators left office in 2000 based upon CI-64's presumptive validity. These former officeholders, their supporters and other potential candidates who made decisions based on CI-64's presumptive validity would be prejudiced by Plaintiffs' late-filed action.

¶33 Similarly, if we allowed Plaintiffs to challenge the procedure by which CI-64 was enacted nine years after the fact, what would prevent a party from filing a similar procedural challenge to some other constitutional initiative fifteen, twenty or even thirty years after that initiative's enactment? There must be a point at which a claim asserting that Montana voters failed to follow the proper procedures in enacting a constitutional initiative simply comes too late. We have reached that point.

¶34 Additionally, we note that while some courts have struck down term limits initiatives in their respective jurisdictions, each of those cases is distinguishable from the case presented to this Court. Most recently, the Oregon Supreme Court rejected a laches defense against a challenge to Oregon's term limits initiative. Lehman v. Bradbury (Or. 2002), 37 P.3d 989. The plaintiffs in Lehman also waited nine years to bring their challenge based on an alleged violation of the separate vote requirement. However, the Oregon Supreme Court rejected the defendants' claim that the plaintiffs' challenge came too late because of a statute passed by the Oregon Legislature in 2001. That statute provided in pertinent part: If a candidate for state office files a . . . declaration of candidacy . . . and the . . . declaration . . . is rejected by the Secretary of State based on the provisions of [Oregon's term limits initiative], the candidate may file an action that challenges the constitutionality or validity [of that initiative].

Oregon Laws 2001, chapter 145, § 3 (emphasis added).

¶35 Thus, the Oregon Legislature specifically provided that the initiative could not be challenged until the Oregon Secretary of State rejected an individual's declaration of candidacy on the basis of term limits. Montana has no such statutory provision and absent such a protective provision, Plaintiffs cannot justify the nine-year delay in bringing this challenge. Unlike the plaintiffs in Oregon, nothing prevented Plaintiffs here from raising their challenge in 1992 when the voters enacted CI-64.

¶36 In Duggan v. Beermann (Neb. 1996), 544 N.W.2d 68, the Supreme Court of Nebraska declared a term limits initiative passed by Nebraska voters in the November 1994 general election unconstitutional in its entirety. The Nebraska Supreme Court determined that the initiative violated the federal constitution by imposing term limits on federal elected officials. While declining to pass on the constitutionality of the initiative relating to term limits on state officials, the Nebraska Supreme Court determined that the portions of the initiative limiting terms of state officials were so interwoven with the other portions that, despite the initiative's severability clause, the valid portions were not severable. Thus, the Nebraska Supreme Court struck down the initiative in its entirety. Duggan, 544 N.W.2d at 71.

¶37 However, unlike the case sub judice, the challenge to the Nebraska initiative came shortly after the initiative was enacted in November 1994. Indeed, the Nebraska Supreme Court handed down its opinion in that case only fifteen months after the initiative was enacted.

¶38 In Gerberding v. Munro (Wash. 1998), 949 P.2d 1366, the Supreme Court of Washington struck down the initiative imposing term limits on state officials because that initiative was, by its terms, a statutory enactment. The Washington Supreme Court held that a statute, whether adopted by the Washington Legislature or the people, may not add qualifications for state constitutional officers where the Washington Constitution sets those qualifications. Gerberding, 949 P.2d at 1377-78. Again, unlike the case sub judice, the action against the Washington initiative came less than four and a half years after the initiative's enactment.

¶39 In a case similar to Gerberding, the Supreme Judicial Court of Massachusetts held that a term limits initiative approved by the Massachusetts' voters in November 1994, was unconstitutional. League of Women Voters v. Commonwealth (Mass. 1997), 681 N.E.2d 842. In that case, the Massachusetts Supreme Judicial Court determined that the Massachusetts Legislature has no authority to alter the qualifications for public offices that are prescribed by the Massachusetts Constitution and the people are restricted from enacting, by statutory initiative, qualifications for public offices for which the Massachusetts Legislature itself may not enact qualifications. League, 681 N.E.2d at 846. Once again, unlike the case sub judice, the challenge to the Massachusetts initiative came within three years of the initiative's enactment.

¶40 In contrast to the cases mentioned above, the Supreme Court of Idaho recently upheld a term limits initiative enacted by Idaho voters in November 1994. Rudeen v. Cenarrusa (Idaho 2001), 38 P.3d 598. Plaintiffs in that action challenged the initiative on equal protection grounds and on the basis that the initiative impermissibly infringed upon the fundamental right of suffrage guaranteed by the Idaho Constitution. The Idaho Supreme Court determined that the initiative did not violate the candidates' right of equal protection guaranteed by the federal or Idaho Constitutions and that the right of suffrage does not include the right to hold office. Rudeen, 38 P.3d at 605, 608. Although the action to invalidate the Idaho term limits initiative did not come until almost five and a half years after the initiative was enacted, the plaintiffs in that case were attacking the substance of the initiative, not the process by which it was enacted.

¶41 Interestingly, less than two months after the decision by the Idaho Supreme Court, the Idaho

Legislature voted to repeal term limits. In the same way, there is nothing preventing the Montana Legislature, if it so chooses, to attempt to repeal term limits by adopting and submitting a referendum to the voters. Nor is there anything preventing the voters of Montana from repealing term limits via the same process by which they adopted the term limits initiative.

Conclusion

¶42 Without addressing the merits of Plaintiffs' claim, we hold that the doctrine of laches bars Plaintiffs from challenging the process by which the voters approved CI-64. Nevertheless, the voters still retain the right to repeal the term limits initiative via the same process by which they adopted the initiative in the first place. Similarly, the Legislature may still seek to repeal the term limits initiative by adopting and submitting a referendum to the voters.

/S/ JAMES C. NELSON

We Concur:


/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice Terry N. Trieweiler concurring and dissenting.


¶43 I concur with the majority's decision to deny the relief sought by the plaintiffs.

¶44 I dissent from the majority's decision to permanently bar a challenge to the procedure by which Article IV, Sec. 8, of the Montana Constitution was enacted.

¶45 I continue to believe that it was inappropriate for this Court to exercise original jurisdiction over the issues raised by the plaintiff's complaint for declaratory judgment and injunctive relief. As noted in the majority opinion, original jurisdiction requires a demonstration by the party who seeks to invoke it that there are emergency factors which make the normal appeal process inadequate. In this case, the parties knew about the consequences of term limits when Mack J. Cole and B.F. "Chris" Christiaens filed for their most recent terms of office in 1998. They could have filed their claims in the district court immediately thereafter and appealed any adverse decision of the district court if necessary. If they had done so, the parties could have presented the necessary record on which to decide whether the doctrine of laches actually should bar a party from challenging the procedure by which CI-64 was submitted to and passed by the voters of Montana. Instead, this Court must now infer the facts necessary to support its decision.

¶46 The doctrine of laches is an equitable doctrine which is fact intensive. For example, this Court must conclude that the delay was unexplainable; that the complaining parties were actually or presumably aware of their rights; and that enforcement of the complaining parties' rights would be "inequitable" or "prejudicial" to some other person. In order to support the majority's conclusion that all of these elements have been established, the majority assumes what the parties knew and when they knew it or, in the alternative, relies on legal presumptions. The Court also assumes that other elected officials left office based on their assumption that CI-64 was valid. None of these facts are a matter of record. There is no record and that is one reason why I think it was inappropriate for this Court to exercise original

jurisdiction.

¶47 For these reasons, while I do not disagree that laches may apply to a procedural challenge to the process by which Article IV, Sec. 8, of the Montana Constitution was enacted, I dissent from the majority's decision to reach that issue by way of original jurisdiction with no factual record.

/S/ TERRY N. TRIEWEILER