DA 06-0375

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 153

IN THE MATTER OF TRUST B UNDER
THE LAST WILL OF DeWITT C. DUNHAM

WELLS FARGO BANK, N.A.,

      Plaintiff and Appellant,

  v.

ZONA KAML AND ROSE PLOYHAR,

      Defendant and Appellees.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and For the County of Cascade, Cause No. 17534C,
                Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                James R. Walsh, Smith, Walsh, Clarke & Gregoire, PLLP,
                Great Falls, Montana

        For Appellees:

                Alexander (Zander) Blewett III, Hoyt & Blewett, Great Falls, Montana

                Timothy J. Wylder, Attorney at Law, Great Falls, Montana

                          Submitted on Briefs:  September 12, 2007

                                    Decided:  April 29, 2008

Filed:

                                            
                                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellant Wells Fargo Bank appeals an order of the Eighth Judicial District Court, Cascade County, granting Appellees Zona Kaml and Rose Ployhar's M. R. Civ. P. 59 motion for a new trial.  We affirm and remand.

¶2     We restate the issues on appeal as follows:

¶3     1.  Did the District Court err by granting a new trial pursuant to § 25-11-102, MCA, which specifies the grounds for a new jury trial, rather than § 25-11-103, MCA, which specifies the grounds for a new bench trial, and did its order fail to state the grounds for granting a new trial with sufficient particularity under Rule 59?

¶4     2.  Are beneficiaries of a trust entitled to notice of entry of judgment of an order approving a trust accounting, pursuant to M. R. Civ. P. 77(d), and does a failure to provide such notice toll the time limit for filing post-judgment motions?

¶5     3.  Did the District Court err by failing to apply the three-year statute of limitations applicable to trust proceedings under § 72-34-511, MCA, or alternatively, by failing to apply the doctrine of laches?

¶6     4.  Did the District Court's granting of a new trial violate § 72-35-206, MCA, which provides that final trust orders are "conclusive on all persons," and therefore preempts motions under M. R. Civ. P. 52 and 59?

¶7     5.  Did the District Court err by enforcing the "prudent man rule" for a period of time during which no such rule existed under the Montana Code?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8    Appellees Zona Kaml (Zona) and Rose Ployhar (Rose) are two beneficiaries of a trust (Trust B) created by their grandfather, DeWitt C. Dunham, in a will executed on October 3, 1966.  Dunham left over one million dollars in Trust B when he died, designating Wells Fargo's predecessor, Norwest Bank Montana, as trustee (collectively, the Bank).  The life beneficiary of Trust B was Dunham's only child, Mary Ann Mushel (Mary Ann), who was to receive income from the trust for her life.  Dunham's four granddaughters, including Zona and Rose, were made discretionary income beneficiaries under Trust B during Mary Ann's life and will become vested remainder beneficiaries upon Mary Ann's death.

¶9    Under the terms of Trust B, Mary Ann had the right to receive $15,000 annually, as well as additional payments of up to $10,000 annually simply upon her request.  In addition, the Bank was permitted, in its sole discretion, to pay Mary Ann such additional sums as it deemed necessary for her care, support, maintenance, and general welfare.

¶10    Under the stern instruction of Mary Ann, the Bank invested virtually the trust's entire principal in bonds to produce a higher current income which would be available to Mary Ann.  For example, between 1978 and 1995, 98.1 percent of the Trust B assets were invested in bonds and notes and the remaining 1.9 percent was held in cash or cash equivalents.  Throughout this time, the Bank was cognizant that investment in stock equities was an appropriate way to benefit the financial interests of, and fulfill its duty to, the remainder beneficiaries.  Nonetheless, heeding the stern instructions of Mary Ann, the Bank continuously declined to do so.  Investing the trust assets exclusively in bonds

3

resulted in Trust B missing the opportunity to participate in the long and sustained growth in equity values in the stock market during these years.

¶11 The Bank did not inform Zona and Rose of their rights under the trust as remainder beneficiaries. In communications sent from the Bank's attorneys and trust officers to Zona and Rose, Trust B was commonly characterized as solely "for the benefit of Mary Ann." Both Mary Ann and the Bank led Zona and Rose to believe that any payments they received from the trust were made at the discretion of Mary Ann. Although the Bank notified Zona and Rose that the trust assets were invested almost exclusively in bonds, the Bank did not explain to Zona and Rose the consequences of that investment strategy on their interests and expectations—expectations which they were largely uninformed about anyway. The Bank's trust officer wrote to Zona and Rose in 1977 asking them to consent to investment of 100 percent of the trust's assets in bonds, but he later acknowledged that he did not advise them that doing so would disadvantage their financial position. In a 1977 letter to Mary Ann, the Bank cautioned Mary Ann that "a trustee has a duty both to the income beneficiary and to the remaindermen of the trust. We must be impartial as between these two classes of beneficiaries." However, although the Bank recommended to Mary Ann at that time that investments be made in common stocks, it never did so, and its acknowledged duty of impartiality was not reflected in investment decisions made thereafter. In 1997, the trust officer wrote to Zona and Rose again asking them to agree to the trust's exclusive investments in bonds, and he later explained that he did so to prevent the Bank from incurring liability for not investing in stocks. The letter to Zona and Rose stated that Mary Ann "has always been very adamant

4

that the investment objective for the account be 100 percent bonds. Our auditors feel that we should have something in writing from the remaindermen agreeing to this investment objective." While Mary Ann did eventually indicate to her daughters that the Bank considered stocks to be in their best interests, the Bank itself never told Zona and Rose that investing exclusively in bonds was not in their best interest as remainder beneficiaries, and did nothing affirmatively to protect their financial position. In response to Mary Ann's instruction that "the trust was none of their business," Zona and Rose wrote letters back to the Bank consenting to the investment strategy.

¶12 In 1995, the Bank presented its Fourth Accounting of Trust B to the District Court for approval, encompassing a lengthy period of managing the trust assets from 1978 to 1995. Prior to the hearing, the Bank's attorney notified Zona and Rose that they could attend the hearing, but that their presence was not required. Zona and Rose were given no explanation about the nature of this proceeding or the implications of failing to attend. The Bank's Petition for Fourth Accounting requested the District Court to determine that all of the acts of the Bank in managing Trust B were "valid and proper" and stated that "the facts and matters contained [in the petition] are true, accurate, and complete to the best of [the Bank's representative's] knowledge and belief." However, the Bank did not advise the District Court of the disadvantageous nature of its investment strategy for the remainder beneficiaries over this lengthy period. The District Court approved the Fourth Accounting on December 6, 1995.

¶13 Eventually, Zona and Rose came to realize that something was not right, and hired an attorney to meet with the Bank's trust officer and discuss the Bank's handling of the

5

trust. At the meeting, it was pointed out that if 40 percent of the assets had been invested in the stock market during the trust's life, Trust B's assets would then have been worth approximately ten million dollars. Instead, the trust assets were worth three million dollars. Wells Fargo was removed as trustee in 1998.

¶14 In February 2006, Zona and Rose filed a motion, pursuant to M. R. Civ. P. 59, seeking a new trial on the District Court's approval of the Bank's Third Accounting of Trust B, which covered the trust period between 1974 and 1978, and the Bank's Fourth Accounting of Trust B, which covered the period between 1978 and 1995. The District Court conducted proceedings from April 10 to 14, 2006, concerning Zona's and Rose's allegations against the Bank, and on April 21, 2006, issued a preliminary order granting Zona and Rose's motion for a new trial with respect to the Fourth Accounting only. The District Court indicated it was issuing a preliminary order to comply with the sixty-day deadline to rule on the Rule 59 motion, and indicated it would discuss its rationale in greater detail in a supplemental order to be issued later. However, the District Court provided a brief discussion of its reasoning "[f]or purposes of satisfying Rule 59(f)," concluding that § 25-11-102(6), MCA, provided adequate grounds for a new trial, and also noting that its order should not "be taken as an affirmative finding that other subsections of [§ 25-11-102, MCA], may not also be applicable."

¶15 The District Court eventually issued very detailed findings of fact and conclusions of law on July 13, 2006. However, in an order entered on September 13, 2006, this Court held the District Court was without jurisdiction to issue such findings because the present appeal had already been filed and thus, the July 13, 2006, order was void. *See* September

6

13, 2006, Order Granting Appellees' Motion to Dismiss the Bank's second appeal, Cause No. 06-0375. As such, the only rationale validly before this Court is that which is set forth in the District Court's April 21, 2006, order, from which the Bank appeals.[1]

## DISCUSSION

¶16 **1. Did the District Court err by granting a new trial pursuant to § 25-11-102, MCA, which specifies the grounds for a new jury trial, rather than § 25-11-103, MCA, which specifies the grounds for a new bench trial, and did its order fail to state the grounds for granting a new trial with sufficient particularity under Rule 59?**

¶17 A new trial may be granted "for any of the reasons provided by the statutes of the State of Montana." M. R. Civ. P. 59(a). The statutory basis cited by the District Court in granting a new trial on the Fourth Accounting was § 25-11-102(6), MCA. Section 25-11-102, MCA, provides:

> The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> (1) irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;
>
> (2) misconduct of the jury. . . . ;
>
> (3) accident or surprise which ordinary prudence could not have guarded against;
>
> (4) newly discovered evidence material for the party making the application which he could not, with reasonable diligence, have discovered and produced at the trial;

---

[1]The unique procedural posture of this case requires that we draw the necessary facts from the record, rather than from the District Court's order. The recitation of facts herein is for purposes of this decision only, and is not meant to establish them for purposes of any further proceedings.

7

> (5) excessive damages appearing to have been given under the influence of passion or prejudice;
>
> (6) insufficiency of the evidence to justify the verdict or other decision or that it is against law;
>
> (7) error in law occurring at the trial and excepted to by the party making the application.

When it based its decision on subsection (6), the District Court apparently failed to realize that only subsections (1), (3), and (4) of that statute provide a basis on which a new bench trial can be granted. Pursuant to § 25-11-103, MCA, "[n]o new trial may be granted in cases tried by the court without a jury, except on the grounds mentioned in subsections (1), (3), and (4) of 25-11-102." As such, the Bank argues the District Court's order granting a new trial violates § 25-11-103, MCA, and should be reversed. In response, Zona and Rose argue that the Bank failed to contest the application of § 25-11-102(6), MCA, at the District Court level and is barred from raising the issue for the first time on appeal, or alternatively, that this Court should affirm the District Court on the basis of subsections (1), (3), or (4).

¶18 Although the Bank is correct that the District Court erred by citing § 25-11-102(6), MCA, as a basis for a new trial here, we nonetheless agree with Zona and Rose's contention that sufficient grounds for a new trial also existed under subsection (4) of the statute. Indeed, the District Court expressly noted that a new trial could also be warranted under other subsections of the statute. The District Court observed that the Fourth Accounting "raises an issue as to compliance with the 'prudent man rule' which was not addressed in the Order [Approving the Fourth Accounting]," noting that all of the

8

trust assets were held in fixed income securities or cash for sixteen years. It further noted evidence that the trust officers themselves believed trust assets should have been invested in equities—information discovered after the original hearing. Further, it is apparent that the Bank engaged in misrepresentations and/or inadequate advisements to Zona and Rose about their rights and interests under the trust. For example, the Bank represented Trust B as existing for the benefit of Mary Ann, and led Zona and Rose to believe that any distribution they received under the trust was simply because Mary Ann had approved it. Zona and Rose were not informed of the rights held in their own stead. Moreover, the Bank's investment strategy did not reflect Zona's and Rose's financial interests, and the Bank did not discuss with them the consequences of investing only in bonds. The District Court was not provided with this information at the time of the Fourth Accounting. Likewise, it appears that Zona and Rose had not been apprised of their remainder interest in the trust at any time prior to that accounting, and were provided little, if any, information about the nature of the hearing on that accounting.

¶19 This newly discovered material evidence satisfied, at a minimum, § 25-11-102(4), MCA, and warranted a new trial. Although the District Court relied on the wrong subsection in support of its holding, it reached a proper result. "We will not reverse a district court when it reaches the right result, even if it reached that result for the wrong reason." *Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, ¶ 23, 152 P.3d 1275, ¶ 23.

¶20 The Bank also argues that we should reverse the District Court because its order failed to specify the grounds for granting a new trial with sufficient particularity. Rule

9

59(f) of the Montana Rules of Civil Procedure requires that "[a]ny order of the court granting a new trial, shall specify the grounds therefor with sufficient particularity as to apprise the parties and the appellate court of the rationale underlying the ruling . . . ." According to the Bank, the Rule 59(f) requirement serves two purposes: to prevent this Court from having to second guess the District Court's reasoning, and to ensure that the District Court engages in disciplined reasoning when considering the claims before it. *See Shannon v. Hulett*, 202 Mont. 205, 206-07, 656 P.2d 825, 826 (1983).

¶21 We conclude that both purposes were served by the District Court's first order. The only reason a more detailed explanation is not part of the record is because the District Court incorrectly assumed that its subsequent findings of fact and conclusions of law, which were very detailed, would become a part of its original order. However, the court's rationale, set forth in its initial three-page order, was sufficient, even given the District Court's erroneous reliance on § 25-11-102(6), MCA, as the statutory basis for granting a new trial. The District Court expressed skepticism about the Bank's compliance with the "prudent man rule" and mentioned the fact that all of the trust assets were held in fixed income securities or cash for sixteen years. In addition, the District Court noted that "testimony and documents produced during the bifurcated trial held April 10 to 14, 2006 indicate that trust officers themselves believed that a significant portion of the trust assets should have been invested in equity securities, that is, the trust assets should have been invested in a diversified portfolio." The court concluded that the Fourth Accounting raised questions about the Bank's actions "on its face."

¶22 Although not as comprehensive as its supplemental findings of fact and conclusions of law which were later voided by this Court, we conclude that the District Court's rationale was sufficient to satisfy M. R. Civ. P. 59(f). The District Court explained its reasons for granting a new trial "with sufficient particularity as to apprise the parties and [this Court] of the rationale underlying the ruling."

¶23 **2. Are beneficiaries of a trust entitled to notice of entry of judgment, pursuant to M. R. Civ. P. 77, and does a failure to provide such notice toll the time limit for filing post-judgment motions?**

¶24 The Bank argues that Zona and Rose's motion for a new trial, made eleven years after the District Court's order, was untimely and, therefore, the District Court could not reopen the 1995 trust accounting. Rule 59(b) of the Montana Rules of Civil Procedure requires that a motion for a new trial be filed within ten days of service of the notice of entry of judgment pursuant to M. R. Civ. P. 77(d). However, Zona and Rose never received notice of the District Court's entry of the December 6, 1995 Order Approving the Fourth Accounting. According to the Bank, Zona and Rose were not entitled to receive notice of entry of the District Court's order because they did not "appear" at the hearing on the Fourth Accounting. M. R. Civ. P. 77(d) requires service of a notice of entry of judgment or order upon "all parties who have made an appearance."

¶25 In response, Zona and Rose argue they were entitled to receive notice of the District Court's entry of the order because they were "indispensable parties" who had "appeared, as a matter of law," and the Bank's failure to notify them of such entry tolled the ten-day period for filing their Rule 59 motion for a new trial.

11

¶26 Although this Court has not previously addressed whether notice of entry of judgment must be made to trust beneficiaries after a formal trust proceeding, we have previously held that such notice must be given to devisees at the conclusion of formal probate proceedings. In *Matter of Estate of Holmes*, 183 Mont. 290, 599 P.2d 344 (1979), the decedent's will devised all of his property to the Shriners Hospital and specifically stated that no provision be made for his immediate family. After Holmes' death, a hearing was set on the personal representative's petition to admit the will to probate, and notice of the hearing was sent to the Shriners. However, the Shriners did not attend the hearing, and were not served with notice of entry of the order entered by the court. That order declared two-thirds of the devise void under Montana's Mortmain Statute (now repealed) in response to objections from Holmes' son, who was left out of the will. The Shriners were notified of this voidance by a letter from Holmes' personal representative, and the Shriners appealed the matter to this Court, challenging the validity of the statute. *Estate of Holmes*, 183 Mont. at 292, 599 P.2d at 345.

¶27 On appeal, Holmes' son argued that the Shriners could not challenge the statute because they had not appeared before the District Court. In response, the Shriners argued they had not received proper notice of the challenge to the will, and thus had challenged the statute at the first opportunity they were afforded, which happened to be on appeal. We first observed that Shriners were entitled to notice of the Holmes' son's objection to the petition for probate because they were devisees entitled to such notice pursuant to the Montana Uniform Probate Code. Applicable to the present action, however, was our second observation, in which we held that a devisee is also a "party" under M. R. Civ. P

12

77(d) and is entitled to notice of entry of judgment so long as they are not in default for failure to appear. *Estate of Holmes*, 183 Mont. at 294-95, 599 P.2d at 346. We based this decision, in part, on the California Court of Appeals' holding that named beneficiaries in a testamentary trust are indispensable parties to litigation of that trust. *See Estate of Reed*, 259 Cal. App. 2d 14, 21 (1968) ("As a beneficiary under the trust created under said will in his favor, he has the right, as a party beneficially interested, to appear and contest said account, or to participate in any other proceeding affecting the property of said estate . . . .") (citation omitted). Thus, we held that, pursuant to M. R. Civ. P. 77(d), "named devisees in wills who are not in default for failure to appear are entitled to notice of the entry of an order in formal probate proceedings." *Estate of Holmes*, 183 Mont. at 294, 599 P.2d at 346. We also held that "[t]his rule applies regardless of actual notice of the entry of the order by the party seeking to appeal the order" and that, because no notice of entry of judgment had been served, "the time for appealing . . . has not yet begun to run." *Estate of Holmes*, 183 Mont. at 295, 599 P.2d at 347.

¶28    Similarly, in *Estate of Spencer*, 2002 MT 304, ¶ 16, 313 Mont. 40, ¶ 16, 59 P.3d 1160, ¶ 16, we addressed the issue of whether a bank, which had filed a creditor's claim against an estate during informal probate, was entitled to notice of hearing when formal proceedings were later initiated for adjudication of heirs and settlement of the estate, and whether it was entitled to notice of entry of the subsequent district court order under M. R. Civ. P. 77. We concluded that the bank was an "interested person" as defined by the probate code and thus entitled to notice of both. *Estate of Spencer*, ¶¶ 16, 23.

¶29    Here, the beneficiaries were entitled to notice of the trust proceeding, specifically the hearing on the Fourth Accounting, pursuant to § 72-35-306, MCA (1995).  Their interest was certainly not lesser than the interest of the devisee in *Holmes* and the creditor in *Spencer*, and just as the parties in those cases were entitled to notice of the entry of orders in formal probate proceedings, Zona and Rose, as named beneficiaries of the trust, are likewise indispensable "parties" who must be served with notice of entry of a judgment or order in trust proceedings.  Of course, the ultimate appealability of trust orders may depend on the resolution of such issues as statute of limitations and laches, as we discuss herein under Issue 3.

¶30    The Bank argues that our holding in *Holmes*, and our subsequent holding in *Spencer*, which cited *Holmes*, is inapplicable because in *Holmes* we applied a different version of Rule 77(d).  The pre-amendment version of Rule 77(d) provided that notice of entry was to be served "upon each party who is not in default for failure to appear."  The version of Rule 77(d) applicable to the present action requires service of the notice "upon all parties who have made an appearance."  The Bank contends the new rule removed the requirement that notice be given to a party who has not appeared and is not yet in default, such as Zona and Rose, and requires notice only to parties who have appeared, which it contends Zona and Rose did not do.  However, we clearly held in *Holmes* that devisees, and now we now hold the same for trust beneficiaries, are indispensable parties to their respective formal statutory proceedings who must receive notice of the proceedings and notice of entry of the order.  In essence, these indispensable parties are considered to have "appeared" as a matter of law.  In 1999, subsequent to the proceeding at issue here,

14

the Legislature amended § 72-34-306, MCA, to require notices of hearing in trust proceedings to state that "failure to appear and object bars any further claims against the trustee[,]" thereby addressing a default mechanism within the trust statutes which did not exist at the time of the hearing herein. *See* 1999 Mont. Laws 911.

¶31 Because no notice of entry of order was served upon Zona and Rose, the ten-day limit for filing their Rule 59 motion for a new trial had not expired when their motion was filed with the District Court, and was not untimely.

¶32 **3. Did the District Court err by failing to apply the three-year statute of limitations applicable to trust proceedings under § 72-34-511, MCA, or alternatively, by failing to apply the doctrine of laches?**

¶33 The Bank argues that § 72-34-511, MCA, bars Zona and Rose from reopening the Fourth Accounting, for the purpose of alleging breach of trust, because the accounting adequately disclosed the existence of their claim and more than three years have since passed. Section 72-4-511(1), MCA, provides in pertinent part, that

> [i]f a beneficiary has received an interim or final account in writing . . . that adequately discloses the existence of a claim against the trustee for breach of trust, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within 3 years after receipt of the account or report. An account or report adequately discloses the existence of a claim if it provides sufficient information so that the beneficiary knows of the claim or reasonably should have inquired into the existence of the claim.

According to the Bank, the three-year period of limitation began to run when Zona and Rose received the Fourth Accounting from the Bank, which stated that Trust B was invested in 98.1 percent bonds and notes, and the rest in cash. Alternatively, the Bank argues that the doctrine of laches barred reopening the Fourth Accounting due to Zona

15

and Rose's unjustified delay, and that allowing them to assert that right at this time would be inequitable to the Bank.

¶34 In response, Zona and Rose argue that the rules governing post-hearing motions are governed by M. R. Civ. P. 52, 59 and 60, and the statute of limitations does not apply to those. Instead, Zona and Rose contend, the doctrine of "extrinsic fraud" applies here, which has been used in other states to set aside years of fraudulent court accountings without reference to a statute of limitations. More specifically, Zona and Rose argue the Bank fraudulently failed to disclose the existence of Zona and Rose's claim for breach of trust. With respect to the Bank's laches argument, Zona and Rose argue that the Bank made no showing of prejudice or inequity, as we required in *Cole v. State ex rel. Brown*, 2002 MT 32, ¶ 25, 308 Mont. 265, ¶ 25, 42 P.3d 760, ¶ 25.

¶35 The statute of limitations and laches arguments both require resolution of contested factual issues which this Court cannot address. Findings of fact with respect to factual issues underlying the statute of limitations and laches defenses are absent from the record, because the District Court's findings of fact, conclusions of law and supplemental order addressing these issues were voided by this Court and because these issues were not addressed in the District Court's first order. Consequently, this Court must decline to address these issues and allow them to be addressed on remand.

¶36 **4. Did the District Court's granting of a new trial violate § 72-35-206, MCA, which provides that final trust orders are "conclusive on all persons" and therefore preempts motions under M. R. Civ. P. 52?**

¶37 The Bank argues that the District Court erred in granting a new trial because the order approving the Fourth Accounting was "conclusive on all persons" pursuant to § 72-

16

35-206(2), MCA, and thus could not be reopened by the District Court on Zona and Rose's motion for a new trial. Section 72-35-206(2), MCA, provides that "[i]f it appears to the satisfaction of the court that notice [of formal trust proceedings] has been regularly given or that the party entitled to notice has waived, the court shall so find in its order. When the order becomes final, it is conclusive on all persons, whether or not in being." The basis for the Bank's argument rests on its assumption that the District Court's order approving the Fourth Accounting "became final," and thus was "conclusive."

¶38 However, an order becomes final only when the time to appeal has expired. *In re Marriage of Nordberg*, 265 Mont. 352, 356, 877 P.2d 987, 990 (1994). We held under Issue 2 herein that the time to appeal from the Fourth Accounting had not expired at the time Zona and Rose moved for a new trial. Because the time to appeal had not expired when Zona and Rose moved for a new trial, the District Court's order had not "become final," and had not yet become "conclusive on all parties." Thus, the accounting was subject to a post-judgment motion.

¶39 The Bank offers an argument that the Rules of Civil Procedure do not apply to trust proceedings, citing Rule 81(a)'s instruction that statutory proceedings are excepted from application of the rules "insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules," and to our holding in *Spencer* that the rules "d[o] not interject [themselves] into other statutory schemes which provide different procedural requirements." *Spencer*, ¶ 13. The Bank argues therefrom that applying Rules 52 and 59 would be inconsistent or in conflict with the conclusiveness provision within § 72-35-206(2), MCA.

¶40 However, *Spencer*'s rejection of the application of the Rules of Civil Procedure was in regard to an informal probate proceeding, which is conducted by the clerk of court. *Spencer* clearly applied the rules to analogous formal probate proceedings. *Spencer*, ¶ 16. Here, Rules 52 and 59 supply an appropriate mechanism for filing a motion after entry of a trust order requesting a new hearing or trial. Though § 72-35-206(2), MCA, deems a trust order "conclusive on all persons, whether or not in being," that occurs only "[w]hen the order becomes final." As discussed above, to become "final," a trust order must be subjected to post-hearing proceedings, including appeal to this Court and appropriate motions to the district court for a new hearing or trial.

¶41 **5. Did the District Court err by enforcing the "prudent man rule" for a period of time during which no such rule existed under the Montana Code?**

¶42 The Bank's final allegation of error is that the District Court improperly applied the "prudent man" investment rule despite the fact that the Legislature did not pass a statutory "prudent man rule" until 1974, which was after the trust assets had been placed with the Bank. However, as Zona and Rose point out, the District Court stated that it had not "determine[d] whether the 'prudent man rule' was actually breached by the investment stategy of the Bank." Notably, the District Court held that further proceedings were required to make such a determination. Without a factual record and conclusions of law before this Court concerning the Bank's alleged breach of the "prudent man rule," we cannot address that issue and remand it for further proceedings.

**CONCLUSION**

¶43    Although a district court's decision whether to grant a new trial is normally subject to review under an abuse of discretion standard, *Jenks v. Bertelson*, 2004 MT 50, ¶ 12, 320 Mont. 139, ¶ 12, 86 P.3d 24, ¶ 12, the issues raised here require us to determine whether the District Court's actions were lawful under the statutes, not whether discretion was appropriately exercised.  We hold that the District Court's actions were lawful, and affirm on Issues one, two and four.  Issues three and five are reserved for the District Court's determination on remand.

¶44    Affirmed and remanded.


                                                        /S/ JIM RICE


We concur:


/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS